Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 6317 | **DATE** | 4/22/2002 |
| **CASE TITLE** | Armament Systems vs. Lansky Lights, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons set forth on the attached memorandum opinion and order, the Court grants Lansky's motion for partial summary judgment (38-1) as to Count 5 but denies the motion as to Counts 1 through 4. The case is set for a status hearing on 5/9/02 at 9:30 a.m. for the purpose of setting a trial date and discussing the possibility of settlement.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | APR 2 4 2002 | |
| | Notified counsel by telephone. | date docketed | |
| ✓ | Docketing to mail notices. | | 56 |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| OR6 | courtroom deputy's initials | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ARMAMENT SYSTEMS AND PROCEDURES, INC., | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) Case No. 00 C 6317 ) |
| LANSKY LIGHTS, INC., et al., | ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Armament Systems and Procedures, Inc. holds rights in a United States patent (No. 6,190,018) that discloses a "Miniature LED [light emitting diode] Flashlight." ASP markets and sells its LED flashlights under the name "Sapphire," ASP's registered trademark. ASP's Sapphire lights feature a slim profile, a brightly colored side panel of geometric shape, and a contrasting frame housing; they also feature a key ring extension and lock to enable them to be clipped onto a purse or bag. ASP markets its lights to law enforcement and security industry personnel, but it also sells them to civilians through retail stores such as Finish Line Sports, Galyan's, and Ace Hardware, through catalog companies such as Herrington, L.L. Bean, Solutions, and Sky Mall, and through small retail establishments such as beauty salons, restaurants, gas stations, and gift shops.

In this action, ASP has sued Lansky Lights, the exclusive United States distributor for IQ Hong Kong Limited, a Hong Kong-based company that designs, manufactures and exports LED flashlights, and Lansky Lights' president, Arthur Lansky. ASP alleges trade dress infringement,



dilution under federal and state law, unfair competition, and violation of the Illinois Consumer Fraud and Deceptive Business Practices Act and the Uniform Deceptive Trade Practices Act in connection with Lansky's manufacture and sale of a handheld LED flashlight known as the "Aurora" (IQHK's light is also sometimes referred to as the "Starlight"). ASP also sued these defendants for patent infringement, but the Court has stayed proceedings relating to that claim because of a re-examination of the patent currently pending before the Patent and Trademark Office.

The case is before the Court on defendants' motion for partial summary judgment; the defendants have moved for summary judgment on all of the non-patent infringement claims (Counts 1 through 5). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

1. Trade Dress Infringement

In Count 1, ASP alleges that Lansky has infringed ASP's trade dress in violation of 15 U.S.C. §1125(a). "The design or packaging of a product may acquire a distinctiveness which serves to identify the product with its manufacturer or source; and a design or package which acquires this secondary meaning, assuming other requisites are met, is a trade dress which may not be used in a manner likely to cause confusion as to the origin, sponsorship, or approval of the goods." *Traffix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 28 (2001). To win on its trade dress infringement claim, ASP must show that its trade dress is either inherently distinctive or has acquired secondary meaning and that the similarity of the defendant's trade dress causes a

2

likelihood of confusion on the part of consumers as to the source or affiliation of the products. *Thomas & Betts Corp. v. Panduit Corp.*, 138 F.3d 277, 291 (7th Cir. 1998).

Lansky first argues that it is entitled to summary judgment on Count 1 because ASP cannot demonstrate secondary meaning. "'[S]econdary meaning' is acquired when 'in the minds of the public, the primary significance of a product feature . . . . is to identify the source of the product rather than the product itself.'" *Thomas & Betts Corp. v. Panduit Corp.*, 65 F.3d 654, 658 (7th Cir. 1995) (quoting *Qualitex Co. v. Jacobson Products Co. Inc.*, 514 U.S. 159, 163 (1995); *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844, 851 n.11 (1982)). "It is not enough that the consumers associate the form of the product with a particular producer. . . . Consumers must also care that the product comes from a particular producer (though they need not be able to identify him) and must desire the product with the particular feature because it signifies that producer." *Id.* at 658-59.

ASP argues that consumers have come to associate the Sapphire light's characteristics with ASP and that they ask for the product by describing its distinctive black frame housing with flat side colored panels, its push button activator, its blue LED light and its retention clip; ASP also claims that consumers specifically request ASP's quality craftsmanship and lifetime guarantee. *See, e.g.*, Affidavit of David Houston, ¶5; Affidavit of Dr. Kevin Parsons, ¶7; Affidavit of Lawrence Sweeney, ¶7. But we have to ask whether the evidence shows that consumers want a light made by ASP above all other light makers, or whether they want a flashlight made in a particular manner regardless of who makes it; if it is the latter, ASP is not entitled to trade dress protection. *See Sinko v. Snow-Craggs Corp.*, 105 F.2d 450, 453 (7th Cir. 1939), *cited in Thomas & Betts*, 65 F.3d at 659. There is certainly evidence in the record to

3

suggest that it is the latter. For example, although David Houston, the buyer for Herrington, testified that Herrington customers specifically ask for the Sapphire, identifying it by its unique appearance, quality craftsmanship, and lifetime guarantee, *see* Houston Affidavit, ¶5, in selling the Sapphire, Herrington never even mentions to its customers that ASP is the manufacturer; ASP does not appear anywhere in Herrington's catalog descriptions or on Herrington's Internet site, and the ASP name, which is stamped on the product, is not visible in the catalog picture. *See* Houston Affidavit, Exhibit 1. The same is true of the Sky Mall Catalog. *See* Affidavit of Darius Dant, Exhibit 1. Sky Mall touts the Sapphire's small size, powerful light and durable construction, yet it never says who manufactures the lights; it says only that if anything should ever go wrong with the light, "the manufacturer will replace the whole light, free of charge, for your lifetime." *Id.*

But ASP also submitted an affidavit from one of its distributors, Lawrence Sweeney of Practical Defense Systems, Inc., who testified unequivocally that his customers – largely government agencies and law enforcement personnel – routinely ask for ASP's lights because of ASP's reputation for making quality, reliable products with iron-clad guarantees and recognize ASP as the manufacturer of the Sapphire because of the Sapphire's distinctive design. *See* Sweeney Affidavit, ¶¶3, 6-7. ASP also introduced an affidavit from another distributor, Andrew Kroll of Kroll International, who testified that his customers "have come to identify the Sapphire by its appearance as an ASP Sapphire, and ask for the 'ASP' light [because] of the quality of the light and the lifetime guarantee." Kroll Affidavit, ¶7. This evidence is sufficient to create a genuine issue of fact as to secondary meaning. The trier of fact ultimately may conclude that the situation presented by the catalog consumers – who clearly do not care who makes the lights –

4

more accurately reflects what is going on in the marketplace. But at this stage of the proceedings, it would be inappropriate for the Court to consider the credibility issues necessary to make that call. *See Thomas & Betts*, 138 F.3d at 293. Accordingly, the Court cannot grant summary judgment for lack of secondary meaning.

Lansky also argues that summary judgment is appropriate because ASP cannot establish a likelihood of confusion as to the source of the lights. To determine whether a likelihood of confusion exists, we consider: 1) the similarity of the trade dress; 2) the area and manner of concurrent use; 3) the degree of care likely to be used by consumers; 4) the strength of the plaintiff's trade dress; 5) actual confusion; and 6) the intent of the defendant to pass off its product as that of the plaintiff. *Thomas & Betts*, 138 F.3d at 296 (citing *Dorr-Oliver, Inc. v. Fluid-Quip, Inc.*, 94 F.3d 376, 382 (7th Cir. 1996)). "[N]one of these factors alone is dispositive, and the weight to be accorded each varies from case to case." *Id.* The first factor seems to favor ASP because the defendants' product is undeniably similar in appearance to ASP's Sapphire light: both have a fairly slim profile, both have colored side panels and a black frame housing, both have a push button to activate the light, and both have a clip that allows the user to attach the light to a purse or bag. Additionally, it appears that there is at least some overlap in terms of where ASP and Lansky market their lights: both sell them at some of the same trade shows. But when considering the question of confusion, we cannot simply look at the two products side-by-side, but must instead look at "what happens in the marketplace." *Id.* (citing *Meridian Mutual Insurance Co. v. Meridian Insurance Group, Inc.*, 128 F.3d 1111, 1115 (7th Cir. 1997); *James Burrough Ltd. v. Sign of Beefeater, Inc.*, 540 F.2d 266, 275 (7th Cir. 1976)). And "[c]ustomers who do not care about the source of the goods are not considered in the determination whether

5

there is a likelihood of confusion." *Syndicated Sales*, 192 F.3d at 636 (citing 3 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* §23:5, at 23-16 to 23-17 (1999)). As explained above, there is certainly evidence in the record to suggest that at least some of the people who buy ASP's lights do not care – indeed do not even know – who makes them. But there is also evidence – namely the Sweeney and Kroll affidavits – that some customers do care about the source of the goods and that they specifically request the Sapphire light because it is made by ASP.

There is also evidence of actual confusion. Sweeney and Kroll both testified that their customers were confused about who makes the Aurora and Sapphire lights. Sweeney testified that several of his existing customers had come up to him at a trade show and demanded to know why he was selling ASP's Sapphire for $8.97 when they could get another ASP light, which turned out to be one of defendants' lights, for $1.99. Sweeney Affidavit, ¶¶9-10. And Kroll testified that he himself had confused the defendants' product for a light made by ASP. ¶¶8-11. ASP also offers as evidence of actual confusion a letter from Murray de Picciotto, a consumer, who mistakenly returned to ASP what he thought was a defective Sapphire Light but which turned out to be a light manufactured by Lansky. *See* Parsons Affidavit, Exhibit 10. "[E]vidence of actual confusion, where it exists, is entitled to substantial weight," *Thomas & Betts*, 138 F.3d at 297 (citing *Meridian*, 128 F.3d at 1118), and de Picciotto's letter and the Sweeney and Kroll affidavits are more than enough to create an issue of fact as to confusion.

Finally, with respect to the customer confusion at the trade show, Sweeney also testified that the lights his customers had purchased were sold to them as ASP's Sapphires, *see* Sweeney Affidavit, ¶10, which suggests that defendants were intending to pass off their lights as ASP's

6

lights. Based on all of this evidence, the Court finds that issues of fact exist concerning the likelihood of confusion and therefore denies Lansky's motion for summary judgment.

2. Federal Dilution Claim

In Count 2, ASP alleges dilution under 15 U.S.C. §1125(c). Lansky argues that it is entitled to summary judgment on this claim because the federal dilution statute does not apply to trade dress claims. Although the Seventh Circuit has recognized that this contention is not "totally without merit," *see Syndicate Sales, Inc. v. Hampshire Paper Corp.*, 192 F.3d 633, 639 (7th Cir. 1999), it has never held that the Federal Trademark Dilution Act closes the door to trade dress claims. In fact, in *Syndicate Sales*, the very case in which it recognized the potential merits of Lansky's argument, the court reversed the entry of summary judgment on a trade dress dilution claim and sent the case back to the district court for further consideration of whether the trade dress at issue was sufficiently "famous" to establish dilution under the Act. *Id.* at 641. Accordingly, we decline to grant summary judgment on the federal dilution claim on the basis urged by Lansky.

Having said this, we note that it is not at all clear that ASP will be able to satisfy the requirements of a federal dilution claim. For example, to prove its claim under the Federal Trademark Dilution Act, ASP must provide sufficient evidence that its trade dress is "famous" in light of its inherent or acquired distinctiveness, the duration and extent of ASP's use, advertising and publicity of the trade dress, the scope of the geographical trading area in which ASP sells its lights and the channels of trade for ASP's lights, the degree of recognition of ASP's trade dress within those trading areas and channels of trade, and the degree of recognition of Lansky's trade dress within those same areas and channels. *See Syndicate Sales*, 192 F.3d at 639 (citing 15

7

U.S.C. §§1125(c), 1127). But Lansky has not argued that it is entitled to summary judgment on this basis, so we will save resolution of the issue for another day.

3.   State and Common Law Claims

In addition to the federal trade dress and dilution claims, ASP alleges common law unfair competition (Count 3), violation of the Illinois Consumer Fraud and Deceptive Business Practices Act and the Uniform Deceptive Trade Practices Act (Count 4), and violation of the Illinois Anti-Dilution Act (Count 5). Taking the latter first, Lansky correctly argues that the protection of the Illinois Anti-Dilution statute is not available to competitors. *See AHP Subsidiary Holding Co. v. Stuart Hale Co.*, 1 F.3d 611, 619 (7th Cir. 1993) (citing *EZ Loader Boat Trailers, Inc. v. Cox Trailers, Inc.*, 746 F.2d 375, 380 (7th Cir. 1984); *Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc.*, 786 F. Supp. 182, 214 (E.D.N.Y. 1992)). We therefore grant Lansky's motion for summary judgment with respect to Count 5. We deny the motion, however, with respect to Counts 3 and 4; Lansky moved for summary judgment on these claims based solely on its argument that ASP cannot establish a likelihood of confusion, and in light of our findings above, we reject that argument.

8

## Conclusion

For the reasons explained above, the Court grants Lansky's motion for partial summary judgment [Docket # 38-1] as to Count 5 but denies the motion as to Counts 1 through 4. The case is set for a status hearing on May 2, 2002 at 9:30 a.m. for the purposes of setting a trial date and discussing the possibility of settlement.

Dated: April 22, 2002

_____
MATTHEW F. KENNELLY
United States District Judge