Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 6317 | **DATE** | 9/16/2002 |
| **CASE TITLE** | Armament Systems vs. Lansky Lights | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons set forth on the attached Memorandum Opinion and Order, the Court grants plaintiff's motion to reconsider the 11/4/02 trial (57-1) but denies plaintiff's motion to allow it to introduce expert testimony with regard to its non-patent claims (57-2). The Court denies plaintiff's motion to transfer (58-1). The trial date of 11/4/02 is vacated and reset to 6/19/03 at 9:45 a.m. Deadline for amending complaint is set to 9/30/02. Fact discovery deadline is 12/31/02. Plaintiff's claim chart due 10/16/02. Status hearing set to 3/31/03 at 9:30 a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | SEP 23 2002 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 66 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| OR | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ARMAMENT SYSTEMS AND PROCEDURES, INC., ) ) ) Plaintiff, ) ) vs. ) ) LANSKY LIGHTS, INC.; ARTHUR ) LANSKY LEVINE & ASSOCIATES, INC., ) and ARTHUR LANSKY LEVINE, ) ) Defendants. ) | Case No. 00 C 6317 |

DOCKETED
SEP 2 3 2002

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

In this case, plaintiff Armament Systems and Procedures, Inc. has sued Lansky Lights, Inc., Arthur Lansky Levine & Associates, Inc., and Lansky Lights' president Arthur Lansky Levine (collectively "Lansky"), for infringement of its patent for a "Miniature LED [light emitting diode] Flashlight," as well as for trade dress infringement, dilution, unfair competition, and violation of Illinois law. The case did not originally include a patent claim; ASP's patent was not issued until early 2001, and ASP amended its complaint to include the claim following that date. On September 4, 2001, the Court, acting on a motion filed by defendants, stayed proceedings on the patent claim due to the Patent Office's decision to grant a request for examination of the patent, but declined to stay the remainder of the case.

Prior to that ruling, the Court had, on June 5, 2001, entered a scheduling order directing the parties to serve reports of experts pursuant to Rule 26(a)(2) by December 1, 2001, and closing discovery as of April 1, 2002. The September 4 order had the effect of suspending this schedule

with regard to ASP's patent claim, but the schedule remained in effect as to all of ASP's other claims. ASP disclosed no experts by the deadline, instead sending defendants a letter stating that "the experts that plaintiff intends to disclose relate to the patent issues in the case, which have been stayed by Judge Kennelly's order. Accordingly, the plaintiff will make appropriate expert disclosures when that stay is lifted." *See* Defendant's Response to ASP's Motion to Delay Trial, Ex. C.

On April 22, 2002, the Court largely denied defendants' motion for summary judgment as to ASP's non-patent claims, and at a status hearing held on May 9, 2002, the Court set the case for trial on November 4, 2002.

ASP filed its original complaint in the present case on October 12, 2000. It had previously filed, on September 14, 2000, a lawsuit in the Eastern District of Wisconsin against IQ Hong Kong and other defendants, also alleging violation of ASP's trade dress. The defendants in that case challenged personal jurisdiction and venue, but Judge Lynn S. Adelman denied those motions on December 18, 2001. Following issuance of its patent, ASP amended its claims against IQHK to include a patent infringement claim; Judge Adelman, like this Court, stayed proceedings on that claim while directing that the remaining claims were to proceed. Judge Adelman has set the case for trial on September 15, 2003.

The products sold by the defendants in this case that are claimed to have infringed ASP's trade dress and its patent were manufactured by IQHK. At the time ASP filed suit against IQHK, it was unaware of Lansky's imminent offering of the product. Then it discovered Lansky offering the product at a trade show in this District. ASP chose not to add the Lansky defendants to the already-pending IQHK suit because IQHK had challenged personal jurisdiction and venue, and at that point ASP was unsure whether it could sustain personal jurisdiction and venue in

2

Wisconsin as to the Lansky defendants. (Since that time, ASP has learned that Lansky distributed the product in Wisconsin through representatives based there, and that products distributed by Lansky were sold at the retail level in Wisconsin.)

In late July, ASP filed two interrelated motions before this Court. First, it moved to delay the November trial or alternatively to permit it to designate a damages expert prior to that trial. Second, ASP moved to transfer this case to the Eastern District of Wisconsin where, presumably, it would then move to consolidate the case with its case against IQHK. For the reasons stated below, the Court grants ASP's motion to delay the trial, denies its motion to reopen the designation of experts on the non-patent claims, and denies its motion to transfer the case.

**Discussion**

**1.      Motion to delay trial or to permit late designation of expert**

ASP's rationale for delaying the trial is that its discovery of facts pertinent to the trade dress claim has been hindered due to the stay of discovery regarding the patent claim; it wants to be permitted to designate an expert to support its claim of damages regarding the trade dress claim; and it does not want to be forced to try the case twice (three times, if one counts the Wisconsin case).

ASP has failed to establish that it was prevented from obtaining the discovery it needs. Its claim is that at a January 2001 deposition of IQHK's principal, it learned of evidence that was pertinent to the issue of copying – a relevant point on the trade dress claim – but was unable to follow up by deposing IQHK's design chief due to the bar on patent discovery. ASP's claim is unsupported. This Court specifically ruled that "[d]iscovery pertinent to [the trade dress and other non-patent] claims may proceed, even if it may incidentally overlap with the issues on the patent claims." Order of Sept. 4, 2001. If ASP had a question regarding its ability to depose the

3

IQHK design chief, however, it could have brought the issue before this Court or Judge Adelman. It did not do so.

Second, there was nothing preventing ASP from identifying a damages expert on the trade dress claim; it simply chose not to do so. ASP says that it did not obtain a report from its consulting expert because the expert was also working on the issue of patent infringement damages; "it was not known what claims would survive summary judgment nor was it anticipated that the non-patent claims would be tried separately from the patent count." Memorandum of Law in Support of ASP's Motion to Reconsider the November 4, 2002 Trial, p. 5. ASP says that it "expected that the deadline for expert testimony would be extended to accommodate the Court's ruling subsequent to the summary judgment [ruling] and the emergence of ASP's '018 patent from reexamination." *Id.* Neither of these points holds water. The Court had stayed proceedings on the patent claims but expressly declined to stay the rest of the case. Thus barring some change – which ASP never advocated – it was abundantly clear that the patent claims would be tried separately from the remaining claims. Further, the Court had given the parties no reason to believe that expert discovery on the non-patent claims – closed long before the summary judgment ruling – would be revived. The most reasonable inference is that the belatedness of ASP's request to designate results not from any ruling the Court made, and not from ASP's hopes for *sua sponte* alterations in the pretrial schedule, but rather from the fact that ASP came up with a new theory of damages. That, however, is what schedules and deadlines are all about; they require the parties to think through their claims and defenses *before* the deadline has passed, not after. If a party fails to do so, it cannot cry foul, and it has no entitlement to a retroactive revision of the pretrial schedule to suit its needs. Indeed, defendants took discovery, and prepared their defense of the non-patent claims, in reliance on the fact that

4

ASP was not calling an expert. They would be unfairly prejudiced if ASP were now permitted, on the eve of trial, to reverse course, and ASP is not entitled to a continuance to accommodate its newly-minted damage theory.

However, ASP's third reason for delaying the trial fares better. In its reply brief, ASP advises the Court that the Patent Office has now reconfirmed the issuance of ASP's patent and argues that "there is now no need to try the patent claim separately." ASP Reply to Defendants' Response, p. 2. It also relies on *Nilssen v. Motorola, Inc.*, 255 F.3d 410 (7th Cir. 2001), in which the Seventh Circuit disapproved the bifurcation of patent and non-patent claims in a particular case. There are significant differences between this case and *Nilssen* – among other things, ASP does not claim that its damage theories on the patent and non-patent claims are inextricably intertwined, and separate trials would not put at risk any party's right to trial by jury, both of which were key factors in the court's decision in *Nilssen*. *See id.* at 413. But one consideration relied upon by the Seventh Circuit does come into play in the present case – the possibility that appeals from the two parts of this case would, as a result of splitting the cases, go to separate appellate courts despite the fact that there is at least some overlap between the facts underlying the issue of liability in both cases. *See id.* at 414. For these reasons, and because the re-examination of the patent claims has now occurred, the Court agrees with ASP that the two parts of the case should be tried together. The Court will therefore set a new trial date for the entire case.

ASP is not, however, entitled to a windfall as a result of this decision. It will not be permitted to add an expert regarding damages on its non-patent claims; its damages expert will be permitted to opine only with respect to the patent claim. This will avoid any unfair prejudice to defendants as a result of rejoining the patent claim with the remaining claims.

## 2. Motion to transfer

ASP has also moved pursuant to 28 U.S.C. §1404(a) to transfer this case to the Eastern District of Wisconsin, where, presumably it would seek to consolidate the case with its case against IQHK. It is somewhat unusual for a plaintiff to seek transfer under §1404(a); the plaintiff ordinarily picks the venue it wants. ASP has provided a reasonable explanation for its decision originally to sue the Lansky defendants here even though its case against IQHK, which supplied the Lansky defendants with the allegedly offending products, was already pending in Wisconsin. But the condition that caused ASP to file here – the pendency of IQHK's motion to dismiss – was removed in December 2001. ASP could have, without seeking transfer, moved before Judge Adelman to add its claims against the Lansky defendants to the Wisconsin case either before or after December 2001. In other words, ASP need not seek transfer of this case; it can take steps on its own to accomplish the result it seeks. It has made no effort to explain why it has never done so.

Section 1404(a) permits transfer "[f]or the convenience of parties and witnesses, in the interest of justice, ... to any other district or division where [the case] might have been brought." All of the purported positive effects of transfer, however, are predicated upon the ultimate consolidation of this case with the IQHK case. But there is no guarantee that Judge Adelman would permit consolidation; it is conceivable, among other things, that the IQHK defendants would object. Thus the benefits of transfer of speculative to a significant extent.

Even were we to assume that consolidation of the cases is likely, that would not tip the balance in favor of transfer. Transfer is not appropriate where its effect is simply to shift the balance of inconvenience from one party to the other, *see, e.g., Heller Financial, Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989); *Lee, Mann, Smith, McWilliams, Sweeney &*

6

*Ohlson v. Esposito*, No. 93 C 7054, 1993 WL 526375, at *2 (N.D. Ill. Dec.13, 1993); *Unytite v. Lohr Structural Fasteners, Inc.*, 768 F. Supp. 665, 667 (N.D. Ill.1991), and that is what would happen were the Court to grant ASP's motion and consolidation occurred. The Lansky defendants would be lumped into a larger case, involving other separately-represented defendants and claims that do not directly concern the Lansky defendants. And the Lansky defendants' litigation expenses likely would increase, as it was forced to participate in the ongoing proceedings in the IQHK case. Such considerations do not inexorably require denial of a motion to transfer. But in a case in which ASP has always had, but has foresworn, the ability to add the Lansky defendants to the Wisconsin case on its own, the inconvenience that defendants would experience due to the transfer leads the Court to deny ASP's motion in this case.

## Conclusion

For the reasons stated above, the Court grants plaintiff's motion to reconsider the November 4, 2002 trial [docket item 57-1] but denies plaintiff's motion to allow it to introduce expert testimony with regard to its non-patent claims [item 57-2]. The Court denies plaintiff's motion to transfer [item 58-1]. The trial date of November 4, 2002 is vacated. A new trial date (in the spring of 2003) and an expedited discovery schedule regarding the patent claims will be set at the status hearing scheduled for September 16, 2002.

Date: September 16, 2002

MATTHEW F. KENNELLY
United States District Judge

7